

**SIGNED this 12th day of June, 2007.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**
_____

# United States Bankruptcy Court

### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE<br><br>HARDWOOD P-G, INC., CUSTOM FOREST PRODUCTS, LTD. AND CUSTOM FOREST PRODUCTS TRANSPORTATION, INC.<br><br>*DEBTORS* | BANKR. CASE NO. 06-50057-LMC<br><br><br><br>CHAPTER 11 |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS<br><br>*PLAINTIFF*<br><br>V.<br><br>COLUMBIA FOREST PRODUCTS, INC. AND COLUMBIA FOREST PRODUCTS-IMPORT<br><br>*DEFENDANTS* | <br><br><br><br>ADV. NO. 06-5278-LMC |

**DECISION GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT are Plaintiff's motion for summary judgment [Doc. # 29]

("Motion"), Defendants' response and cross-motion for summary judgment [Doc. # 30]

("Response"), Plaintiff's Reply thereto [Doc. # 31] ("Reply"), Plaintiff's response to Defendants'

cross-motion for summary judgment [Doc. # 35], the "Supplement to Defendants' Response to

Plaintiff's Motion for Summary Judgment and to Defendants' Cross Motion for Partial Summary

Judgment" [Doc. # 41] ("Supplement"), and "Defendants' Response to Plaintiff's Reply to

Defendants' Cross Motion for Summary Judgment and Sur-reply Regarding Plaintiff's Motion for

Summary Judgment" [Doc. # 43] ("Sur-reply").

Plaintiff has moved for summary judgment that certain transfers made by Debtors to

Defendants are preferences under section 547(b). *See* 11 U.S.C. § 547(b). Plaintiff further moves that

Defendants may not avail themselves of the affirmative defenses in section 547(c). *See id.* § 547(c).

In response, Defendants have challenged the Plaintiff's 547(b) claim – arguing that there are genuine

issues of material fact regarding whether the transfers in question were transfers of the Debtors'

interest in property. Defendants also argue that it is they, and not Plaintiff, who are entitled to

summary judgment on two affirmative defenses to a preference action: the "ordinary course" defense

of section 547(c)(2) and the "new value" defense of section 547(c)(4).

### Summary Judgment Standard

Plaintiff has moved for summary judgment that the transfers complained of are preferences

under section 547(b). Rule 56(c) of the Federal Rules of Civil Procedure states that summary

judgment is proper when "there is no genuine issue as to any material fact and that the moving party

is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

Plaintiff has also moved for summary judgment that Defendants' affirmative defenses under

section 547(c) do not apply. Where plaintiff moves for summary judgment on an affirmative defense,

the plaintiff must demonstrate that there is no genuine issue of material fact on the elements of the

affirmative defense, whereupon the defendant must go beyond its pleadings to designate specific evidence demonstrating that such a genuine factual issue exists. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997).

Finally, Defendants have moved for summary judgment in their favor regarding the affirmative defenses under section 547(c). When defendant moves for summary judgment on an affirmative defense, the positions are reversed; defendant bears the burden of producing evidence to make its prima facie case, whereupon plaintiff bears the burden of producing or identifying evidence in the record placing in doubt the facts underlying the affirmative defense. *Hardwood P-G, Inc. v. Wright Capital Corp. (In re Hardwood P-G, Inc.)*, No. 06-5121-LMC, 2007 WL 781710 at *1 (Bankr. W.D. Tex. March 9, 2007); *see also* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice & Procedure § 2727 (3d ed. 1998) (discussing burdens of proof on summary judgment).

### Plaintiff has made out its *prima facie* case under section 547(b).

To make out its prima facie preference claim, the Plaintiff must present evidence showing each of the elements set out in section 547(b) of the Bankruptcy Code:

(b)    Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property–

(1)    to or for the benefit of a creditor;

(2)    for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3)    made while the debtor was insolvent;

(4)    made–

(A)    on or within 90 days before the date of the filing of the petition; or

(B)    between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5)    that enables such creditor to receive more than such creditor would receive if–

(A)    the case were a case under chapter 7 of this title;

(B)    the transfer had not been made; and

(C)    such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

Plaintiff has indeed presented evidence of all of the required elements of section 547(b) in its summary judgment motion, and the Defendants do not argue to the contrary as to the elements in subparagraphs (1)-(5). Therefore, as a matter of law, the Plaintiff is entitled to summary judgment on those elements. What's more, the fact that the transfers in question were by either wire transfer from Debtors' bank account or by check from the same account is prima facie evidence that the transfers are transfers of interests of the debtor in property. It is this last element that the Defendants challenge.

Because the Plaintiff has made a prima facie showing, to avoid summary judgment, the Defendants are obligated to demonstrate that there is a genuine issue of material fact by pointing the court to some evidence in the summary judgment record indicating that, in fact, the transfers in question were not of interests of the debtor in property. Defendants assert the following as reasons for the Court to not grant summary judgment:

–    The Debtors and Webster Business Credit (the Debtors' lender) agreed in advance that Webster would overadvance the Debtors' line of credit to pay the Defendants via the December 16, 2005 wire transfer of $213,007.53.

–    The Debtors did not have control of the funds wired to the Defendants; rather they were "earmarked" by Webster and the Debtors for the Defendants.

The earmarking doctrine is a widely accepted defense against a preference claim. *Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1356 (5th Cir. 1986). "The earmarking

doctrine is entirely a court-made interpretation of the statutory requirement that a voidable preference must involve a 'transfer of an interest of the debtor in property'." *In re Bohlen Enterprises, Ltd.*, 859 F.2d 561, 565 (8th Cir. 1988). The case law is not in agreement, however, on the precise contours of the doctrine. The *Bohlen* court, for example, laid out the following three-part test for whether the doctrine should apply:

(1)     the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt,

(2)     performance of that agreement according to its terms, and

(3)     the transaction viewed as a whole (including the transfer in of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate."

*Id.* at 566. However, this is not the test applied by the Fifth Circuit. *See Caillouet v. First Bank and Trust*, No. 06-9052, 2007 WL 1302523, *4 (E.D. La. April 30, 2007) (distinguishing between the Fifth and Eighth Circuits' tests). In the Fifth Circuit, "the determinative factor as to whether the property is part of the debtor's estate is whether the debtor has dispositive control over the property." *Id.*; *see also Coral Petroleum*, 797 F.2d 1362 (finding the debtor's control of funds "the crucial fact" in determining whether funds were the debtor's property for 547(b) purposes). The Fifth Circuit test, of course, is the one binding for purposes of this case.

### Defendants did not waive the "earmarking doctrine" despite not pleading the doctrine as an affirmative defense.

Plaintiff has objected that the Defendants first raised the earmarking defense in the Response, and did not plead the defense in their answer. What is more, the Defendants' initial disclosures mention nothing about earmarking. Of course, if earmarking is an affirmative defense, it must be

pled in the answer. *See* FED. R. CIV. P. 8(c). Some courts, on that ground, have held that earmarking, when not pled, is waived. *In re Winstar Communications, Inc.*, 348 B.R. 234, 273 (Bankr. D. Del. 2005) ("it waived the [earmarking] defense when it failed to plead it as an affirmative defense."). Other courts disagree. *See In re International Ventures, Inc.*, 207 B.R. 618, 620 (Bankr. E.D. Ark.1997) ("the earmarking doctrine is not required to be pleaded as an affirmative defense since it is an element of the plaintiff's proof rather than an affirmative defense."). The Eighth Circuit Bankruptcy Appellate Panel, in the context of discussing where the burden of proof lies in earmarking cases wrote, "The earmarking doctrine is not strictly an affirmative defense under Section 547(c) . . . the earmarking doctrine is derived from an element of the plaintiff's proof rather than an affirmative defense." *In re Libby Int'l., Inc.*, 247 B.R. 463, 467 (B.A.P. 8th Cir. 2000). A recent opinion of the Ninth Circuit found *Libby*'s discussion of burdens of proof "persuasive" and adopted it to conclude that earmarking is not an affirmative defense. *In re Adbox, Inc.*, No. 05-55158, 2007 WL 1584582 at *4 (9th Cir. June 4, 2007). Because the *Adbox* court found that earmarking was not an affirmative defense, the defendant's failure to plead the earmarking defense in its answer did not result the waiver of the defense. *Id.* The Fifth Circuit (whose formulation of the earmarking doctrine differs from that of the Eighth Circuit) has not addressed the precise question whether earmarking was an affirmative defense; it has only referred to it as a "defense". *Coral*, 797 F.2d at 1356. If earmarking, as formulated in this circuit, is not an affirmative defense, then it need not be specifically pled before being advanced as a defense to summary judgment.

Affirmative defenses are essentially "Yes, but . . ." defenses. *Lait v. Genova*, No. 01 C 5125, 2001 WL 1249057 (N.D. Ill. October 17, 2001). They do not attempt to negate a plaintiff's case; rather, they acknowledge that even if the plaintiff's case were true, plaintiff should be denied his

remedy for other reasons. *See Gomez v. Toledo*, 446 U.S. 635, 641 n.8 (1980) (affirmative defenses essentially admit the general complaint, but state another reason why the complainant has no right to a remedy); 5 Federal Practice & Procedure § 1270 (stating that Rule 8(c) is descended from the common law plea of confession and avoidance). The Eighth Circuit's formulation of the earmarking doctrine – agreement, execution and no diminution of the estate – do not directly negate that the given funds are an interest of the debtor in property. The Eighth Circuit's test at least colorably could be an affirmative defense, then. On the other hand, the Fifth Circuit's "control" test *does* negate the contention that the funds belong to the debtor, by testing "debtor's property" in terms of debtor's control over the property. *See Coral Petroleum, supra*. In this circuit, if funds are earmarked, they are beyond the debtor's control, and so are not the debtor's property. That is much closer to a direct negation of a debtor's property interest in the transferred funds – and much farther from a "Yes, but . . ." defense that typifies affirmative defenses. Thus, the earmarking doctrine, as formulated in the Fifth Circuit, is not an affirmative defense. Therefore, Defendants were entitled to raise it for the first time in their response to the summary judgment motion.[1]

**There are no genuine issues of material fact underlying the earmarking claim, and the Plaintiff is entitled to summary judgment.**

The Fifth Circuit first adopted the earmarking doctrine in *Coral Petroleum, Inc. v. Banque Paribas-London*, 797, F.3d 1351, 1356 (5th Cir. 1986). While the Eighth Circuit's Bankruptcy Appellate Panel focuses on agreement, diminution of the debtor's property, and substitution of creditors, the Fifth Circuit focuses more closely on whether the property in question was ever in the

---

[1] The motion to amend, filed by the Defendants after the Plaintiff raised the issue, is thus unnecessary and will be denied as moot.

control of the debtor, making that the touchstone of whether the debtor's property has been diminished. *Id.* In *Coral Petroleum*, the debtor's loan was repaid by a third party, with funds that were not, in fact, the debtor's. The lower court (which was affirmed in this opinion) "held that *at no time* did Coral have general control over the funds whereby it could independently designate to whom the funds would go." *Id.* (emphasis in original). The touchstone of the Fifth Circuit's test, then, is that of control. *See also Matter of Southmark Corp.*, 49 F.3d 1111, 1115 (5ᵗʰ Cir. 1995) (citing *Coral Petroleum* to deny an earmarking defense, and pointing out that the doctrine cannot be invoked where the debtor has absolute control over the funds and the claimant has no legal right to force the debtor to transfer the funds);[2] *In re Coutee*, 984 F.2d 138, 141 (5ᵗʰ Cir. 1993) (a debtor is a mere conduit if it does not obtain actual dominion and control over the funds). The Fifth Circuit in *Southmark* also cited with approval the following explanation from Professor David G. Epstein (currently of Southern Methodist University School of Law): "If the debtor determines the disposition of the funds from the third party and designates the creditor to be paid, the funds are available for payment to creditors in general and the funds are assets of the estate." *Southmark*, 49 F.3d, at 1117 n. 17. Thus, in this circuit, the question is not so much whether there was some sort of agreement. Rather, the question is whether the debtor controlled the funds that were transferred.

  With this background, we now turn to Plaintiff's Exhibit E-2, the deposition of Patrick

---

[2] Explained the court in *Southmark*,

> The check paid to Grosz was drawn on Southmark's Payroll Account, a general bank account containing commingled funds, to which Southmark held complete legal title, all indicia of ownership, and unfettered discretion to pay creditors of its own choosing, including its own creditors. The last point is particularly important, as the primary consideration in determining if funds are property of the debtor's estate is whether the payment of those funds diminished the resources from which the debtor's creditors could have sought payment.

*Southmark*, 49 F.3d, at 1116-17.

Wallace, a former employee of Webster. Mr. Wallace was the Senior Vice President and Portfolio manager who supervised the loan officers responsible for the debtors' credit line. P. Ex. K-2 at 6. On examination by Plaintiff, the following exchange took place:

Q:    At any time did Webster Bank lend money to the debtor that the debtor would take that lent money and pay Columbia Forest?

A:    First of all, it's Webster Business Credit who was the lender. Webster Bank was the parent company. We would only file – my recollection is and the procedure and what was in practice was that if the company would request a draw down under their line of credit that was approved and they then paid it to Columbia, I mean, that would have been okay. But it would have been at the direction of the company that's, you know, that they made the payment that way.

Q:    Okay. Then as a follow up, did Webster Business Credit ever require the debtor to pay money to Columbia Forest?

A:    No.

*Id.* at 47. This testimony indicates that the Debtors, not Webster, had ultimate control over the disputed transfers. Plaintiff has therefore met its burden of presenting a prima facie case that the earmarking doctrine does not apply, and the burden shifts to the Defendants.

We now consider whether Defendants have presented evidence creating a fact issue on who actually controlled the funds in question. Defendants first point the Court toward the deposition testimony of the Debtors' former President/CFO, Anthony (a.k.a. Tony) Smith. Defendants rely upon Mr. Smith's statement that the Debtors' "income" (the court assumes that this means revenue) went into a Webster Bank account that Webster controlled and was "swept" daily. Even if true, this is irrelevant to the question of whether the funds transferred to the Defendants in the wire transfer were controlled by the Debtor, because the "sweeping" referred to funds coming into the debtor, not the funds paid to these Defendants.

The Smith affidavit also makes repeated references to the "control" exercised by Webster. However, Smith's use of the word "control" is not necessarily the same as the Fifth Circuit's use of

the word. Smith testifies that Webster "saw" every check and "micro-managed" the Debtors. Smith also says that the Debtors, through their controller, had to obtain approval of every cash outlay in advance of having their credit line extended. Smith also said that he feared the repercussions of what would happen if he sent a check or made a wire to a vendor without having advance approval, saying that he would have his "head cut off." if he did so. Smith also speculated that there is no way that he could have sent the December 16 wire transfer without advance approval of Webster, including Webster's knowledge of who the funds were going to.

This does not help the Defendants. The situation that they describe, involving a requirement of advance approval of credit extensions with a perceived threat of a stopped payment on unapproved checks, is not the same kind of "control" that the Fifth Circuit requires for earmarking transactions. In this case, the Debtors were in daily negotiations with their lender, who was justifiably concerned about its borrowers' financial health. Nonetheless, when the negotiations were completed, Webster advanced the funds from the credit line. The Debtors then wrote checks or wired funds. The funds were therefore in the "control" of the Debtor. It is not the case that Webster could have paid anyone from these funds without authorization from the Debtors. Nor could Webster force the Debtors to transfer the funds to anyone, once the credit was advanced. Indeed, if anything, it is highly unlikely that Webster would have risked taking that kind of control, for fear of subjecting itself to a lender liability action.[3]

_____

[3] There is no evidence in the record that Webster ever dishonored any check sent by the Debtors, and there is strong evidence that Webster *never* did so. *See* P. Ex. E-1 (Beasley Depo.) at 82:23-84:15 ("Q: Did – did you ever have a point where the bank bounced checks and just didn't advance when you wrote a check? A: No. No. [Webster complained about certain checks., but] . . . eventually they gave in."). Nor is there any evidence that it was Webster that insisted that the Defendants in this case be paid with Webster's funds. It was the Debtors that decided that Columbia needed to be paid, and Webster, in an exercise of business judgment, elected to advance funds to the Debtors so that they could continue operation. Loan proceeds, even those from closely monitored loans, are nonetheless the debtor's money. To harken back to *Southmark*, the Debtors, after receiving the advance, might well have found themselves needing to pay some other, even more critical

Defendants also rely upon the testimony of Jason Beasly, the Debtors' former controller. Beasly testified that the Debtors' consultant, David Hofflich, had to approve everything that was disbursed. Even if true, this is of no help to the Defendants. Hofflich was not an employee of Webster; he was working for the debtor. Further, even if Hofflich were working for Webster, it cannot be the case that a lender – believing itself to be secured – could, by its veto power over every payment made by the debtor, shield all such payments from preference actions. Such an argument would eviscerate section 547(b). Mr. Beasly was also asked about the circumstances surrounding the challenged wire transfers. After stating that it was not unusual for a vendor to request payment by wire, Beasly was asked how he actually performed the wire. He responded:

A.    . . . Normal course of business we were able to do these things online. I could set them up online through the bank's internet site and it just showed up just like a check would show up against my – against my disbursements account and the loan covered it automatically. In this particular case, because of the overadvanced condition, I had to get permission to wire the money before we could advance it. I had to know they were going to advance the money before I released the wire.

Q.    And how would you get that permission?

A.    My guess is I probably called Art and said, "I need to do this, you know, this is one of our critical vendors."

Q.    And Art would say yes or no?

A.    Yes.

Q.    Okay. Do you remember doing that? I mean, do you have a recollection of that?

A.    I don't. It all kinds of – those same kind of things run together because they were kind of inconsequential compared to what we were trying to accomplish.

Q.    Yeah. You seem pretty sure that you did it, though, with regard to those wires. Is it because of the time frame?

A.    It was the time frame and knowing that I -- felt like I was walking on eggshells and I wasn't doing anything cash wise on my own. I just -- there was -- I literally did nothing without the consultants and the bank and Tony and everybody being aware of what we were doing.

---

vendor. There is no evidence to show that the Debtors could not have done so – albeit that doing so might have affected the Debtors' ability to obtain further advances. The Debtors made the decision whom to pay with money they borrowed from Webster. Columbia could not have compelled the Debtors to pay only Columbia out of the loan. *See Southmark*, 49 F.3d at 1116-17 (the ability of the debtor to choose which creditor to pay out of funds indicates that the funds are the debtor's property).

P. Ex. E-1 at 85-86. This testimony does not create a fact issue involving Debtors' control over the funds. Beasley does not recall the actual wire transfer in question, nor does he recall any specific agreement regarding the payment of the funds. The best that he can say is that all transactions, in the timeframe of the alleged preference, required a advance notice to Webster. The sequence of events, therefore, was for Beasly to determine whom he would pay and make the requests of Webster, often with Hofflich's involvement. Upon receiving approval from Webster, Beasly – himself – would actually initiate the wire transfers to the vendors that he, Beasly, selected on behalf of the debtor..

In conclusion, the funds in question were not in the "control" of Webster. They were controlled by the Debtors. There is no evidence in the record to the contrary that is sufficient to create a genuine issue of material fact concerning the "control" requirement of the earmarking doctrine, as applied by the Fifth Circuit. The Defendants have therefore failed to meet their burden of presenting evidence that the transfers were not of an interest in the Debtors in property. Accordingly, the Court finds that the Plaintiff is entitled to judgment as a matter of law on the preference claims under section 547(b).

## Defendants' Affirmative Defenses under section 547(c)

Defendants pled affirmative defenses under section 547(c)(1)-(4). Plaintiff moved for summary judgment on Defendants' affirmative defenses under these sections, placing the burden upon the Defendants to produce some evidence of the existence of each of the elements of these defenses. Defendants have failed to produce evidence or argument pertaining to section 547(c)(1); therefore, Plaintiff is entitled to judgment as a matter of law that the section 547(c)(1) defense does not apply. Further, the Defendants have also dropped their affirmative defense under section 547(c)(3) that they possessed a valid security interest securing the new value that was given to the

Debtors. Supplement to Defendants' Response at 7 [Doc. # 41]. Accordingly, the Court will also grant judgment to the Plaintiff with respect to the section 547(c)(3) defense. What remains are Defendants' defenses under sections 547(c)(2) and 547(c)(4).

**Neither party is entitled to summary judgment**

**on the section 547(c)(2) "ordinary course" defense.**

The trustee may not avoid under this section a transfer–

* * *

(2)     to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--

(A)     made in the ordinary course of business or financial affairs of the debtor and the transferee; or

(B)     made according to ordinary business terms;

11 U.S.C. § 547(c)(2). This affirmative defense, known as the "ordinary course" defense, allows a preference defendant to shield from a trustee transfers that would otherwise be subject to return to the estate, if the defendant can prove the facts underlying the defense. 11 U.S.C. § 547(g).

The discussion here is brief. Defendants carried their burden of producing evidence of their prima facie case via their expert testimony – for both the "subjective" prong of section 547(2)(A) and the "objective" prong of section 547(2)(B). Plaintiff, in response, submitted rebuttal evidence demonstrating a genuine issue of material fact.[4] Accordingly, neither Plaintiff's motion for summary

---

[4] Both parties submitted expert reports that differ on their version of the scope, relevance and meaning of facts relating to ordinary course transactions. The court is not required to accept as true either of the reports at this stage of the proceeding. Whether the reports will ultimately be persuasive will depend on the credibility of the experts, tested against cross

-13-

judgment, nor Defendants' cross-motion for summary judgment will be granted. The section 547(c)(2) affirmative defense survives for trial in its entirety.

**Neither party is entitled to summary judgment**

**on the section 547(c)(4) "new value" defense.**

The trustee may not avoid under this section a transfer–

* * *

(4)     to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor--

 (A)     not secured by an otherwise unavoidable security interest; and

 (B)     on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

11 U.S.C. § 547(c). The burden is upon the defendant to prove the existence of each of these elements. *Id.* § 547(g). The evidence in the summary judgment record contains copies of checks – presented by Plaintiff – evidencing the preferential transfers. The record also contains copies of invoices, evidencing the transfers of new value given to the Debtors. These invoices show the ship date and price of various shipments of product from the Defendants to the Debtors.

The first question is whether the new value supplied by the Defendants was secured by an otherwise unavoidable security interest. The history here is tortured, to say the least. Defendants' invoices expressly reserve a security interest in the goods shipped and the proceeds derived therefrom. The Defendants filed a UCC-1 on December 22, 2005 which claimed a security interest in the lumber products delivered to the Debtors under certain invoice numbers. However, the Court

---

examination at trial. That is quintessentially a matter of fact, not law.

does not discern any evidence that the Debtor "authenticated" a security agreement as required to make the agreement enforceable against the Debtor. *See* Oregon Rev. Stat. § 79.0203(b)(3); Tex. Bus. & Comm. Code § 9.203(b)(3). Without attachment, there can be no valid security interest. Defendants meet their burden under 547(c)(4)(A).

Plaintiff also argues that Defendants' statement in their answer that they had a valid, perfected security interest constituted a judicial admission of that fact. However, not every admission by counsel is a judicial admission. *See Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001) (distinguishing judicial admissions from ordinary evidentiary admissions). "A statement made by counsel during the course of trial may be considered a judicial admission if it was made intentionally as a waiver, releasing the opponent from proof of fact." *Id.* at 476. The Court is not convinced that Defendant's statements in paragraph 52 of the answer asserting a valid security interest were intended as a waiver for the purpose of Defendants' affirmative defense under section 547(c)(4) in paragraph 53. The Court instead finds that these are alternate pleadings that are expressly permitted under the Federal Rules. Fed. R. Civ. P. 8(e)(2). Under the liberal pleading rules of the Federal Rules of Civil Procedure, "one of two inconsistent pleas cannot be used as evidence in the trial of the other." *Continental Ins. Co. of New York v. Sherman*, 439 F.2d 1294 (5th Cir. 1971).

Further, as an equitable matter, the Court notes that Plaintiff was fully aware of the Defendants' assertion of the "new value" defense and of Defendants' alleged security interest. It is hard to imagine how Plaintiff would be prejudiced by Defendants' surrender of their alternate defense based upon such a security interest. The validity of the alleged security interest was already clearly in play, so Plaintiff had ample opportunity to research and conduct discovery on the matter.

Thus, even if the Defendants had made a *judicial* admission that they possessed a valid security interest, it is within the power of the Court to allow such admission to be withdrawn. *Martinez*, 244 F.3d at 477.

In conclusion, there is ample evidence that the transfers of new value were not secured by an otherwise unavoidable security interest. Defendants have therefore met their burden of showing sufficient evidence to make their prima facie case. Therefore, summary judgment on this defense must be denied to Plaintiff; however, Defendants have also cross-moved for summary judgment on this defense. There is some evidence in the record, as Defendants' themselves admit, to put the existence and validity of the security interest into question. The Court accordingly finds that there is a disputed issue of material fact regarding the existence of the security interest, making a grant of summary judgment to Defendants inappropriate as well. In short, the issue of a valid security interest for the purpose of section 547(c)(4) survives for trial.

The next question is the extent to which the transfers of new value came after the preferential transfers. For the purpose of the new value analysis, the date of the transfer of funds by non-postdated check from a debtor to a transferee is the date that the check is received by the creditor. *In re Tennessee Chemical Co.*, 112 F.3d 234 (6th Cir. 1997) (affirming the district court's reversal of the bankruptcy court's ruling that a date of honor rule, rather than a date of delivery rule, applied); *In re Gold Coast Seed Co.*, 30 B.R. 551 (B.A.P. 9th Cir. 1983) ("For the purposes of offsetting credit for new value under § 547(c)(4), we hold that the transfer occurred upon receipt of the check rather than later when the check was honored by the bank."); *Jones v. Aristech Chemical Corp.*, 157 B.R. 720, 722 (N.D. Ga. 1993); Alan N. Resnick, Henry J. Sommer & Lawrence P. King, 5 Collier on Bankruptcy ¶ 547.04[b] (15th ed. LexisNexis 2007); *see also Barnhill v. Johnson*, 503 U.S. 393, 402

(1992) (discussing the difference between the "date of delivery" rule for section 547(c), and the honor date rule of section 547(b)); *In re New York City Shoes, Inc.*, 880 F.2d 679, 683 (3d Cir. 1989) (discussing the merit of the date of receipt rule). This is a sensible rule, for if it were the honor date – rather than the delivery date – that controlled, creditors concerned about a distressed customer's check being a preference would hold off extending new credit to that customer until that customer's check cleared the bank. This would act to discourage the granting of new credit to troubled customers – the very opposite of the "new value" exception's purpose. *Aristech*, 157 B.R. at 722.

This creates an interesting problem for Defendants. Plaintiff has presented, via exhibits authenticated by Randolph N. Osherow, Trustee of the Hardwood P-G, Inc. Litigation Trust, copies of checks and documentation of wire transfers that were honored by the Debtors' bank during the preference period. P. Ex. A-1. This is what the Plaintiff's used to make their prima facie case under section 547(b), and it was adequate to do so, for under section 547(b), it is the "honor date" that matters, not the date of delivery. *See Barnhill,* 503 U.S. at 402.

However, under section 547(c)(4), as discussed *supra*, it is the *delivery* date that matters, and there is no summary judgment evidence regarding the delivery date of the checks beyond the Plaintiff's exhibits. Indeed, the Court could speculate on the delivery date being some time between the date shown on the check (assuming – maybe – that it was not post-dated) and the date that the check was honored; however, the Court cannot so speculate now – on summary judgment. This is indeed a disputed issue of material fact, upon which *Defendants*, not Plaintiff, bear the burden.

How material is this? Before we turn to that question, we must address another matter. Does a transfer of "new value" from the preferred creditor to the debtor shield a preferential transfer under section 547(c)(4) when they occur on the same date?  *In re M & L Business Mach. Co.*, 198 B.R. 800

(D. Colo 1996) affirmed a bankruptcy court's judgment, granted after a trial on the merits, that new value given on the same date as a preferential transfer did not shield the preference. The district court looked only at the dates of the transfer and found that when they occurred on the same date, the preference was not protected. *Id.* at 805. Another case, tried on a stipulated record, found that transfers occurring on the same date did not allow the application of the new value defense, because the burden of proving that the preference preceded the new value was on the creditor-defendant, and he had not met his burden to so prove. *In re Globe Building Materials, Inc.*, 344 B.R. 416 (Bankr. N.D. Ind. 2005). A Nevada Bankruptcy Court has said "It is critical for the operation of (c)(4) that new value be advanced subsequent to the transfer at issue, even if both transactions occur on the same day." *In re Western World Funding, Inc.*, 54 B.R. 470, 479 n.5 (Bankr. D. Nev. 1985). The Court, in its research, has found little else useful on this question.

From these cases, the Court concludes that when the record indicates the dates upon which a preferential transfer and a transfer of new value to the debtor occur, but does not indicate the times of the transfers, a material fact issue exists on whether the "new value" was given after the preference for the purpose of section 547(c)(4). In both *M & L* and *Globe Building*, the bankruptcy court held a trial and made findings of fact; neither case implicated the issues surrounding the procedural posture of a motion for summary judgment. *Globe Building*'s holding is consistent with this Court's view; the bankruptcy court made findings of fact, and it decided that the preference defendant had not met its burden of proving that the preference preceded the "new value". The holding of *M & L* is consistent with this explanation, although this issue was not directly addressed in the opinion. The Court concludes that a grant of summary judgment on such facts would be inappropriate on a preference defendant's motion for summary judgment based upon the application

-18-

of section 547(c)(4).

       With these thoughts in mind, the Court reviews the record to determine whether a grant of summary judgment – to either Plaintiff or Defendants – is justified. For both summary judgment claims under section 547(c)(4), the Court uses the shipment date shown on the invoices as the date upon which new value was transferred to the Debtors. *Rushton v. E & S Int'l Enter. (In re Eleva, Inc.)*, 235 B.R. 486 (B.A.P. 10th Cir. 1999). This is consistent with the terms shown on the invoices, which specify that delivery is complete when the vendor presents the goods to a carrier for shipment.

       We begin with Defendants' cross-motion for summary judgment. Of course, we take all inferences in favor of the non-movant, in this case, the Plaintiff. Therefore, in this analysis, the Court must infer that the date upon which the preferential transfers occurred was the honor date of the check, that is, the latest possible date that the Defendants could have received delivery of the check. This is in favor of the Plaintiff, because later transfer dates for preferences mean that fewer transfers of new value will apply to shield the preferences. *See* 11 U.S.C. § 547(c)(4). The Court further infers that any transfers of new value occurring on the same date as a preference did not happen subsequent to the preference. For illustration purposes only, and not as a finding of fact (which, of course, is forbidden in ruling on summary judgment), the Court attaches a chart showing the Court's analysis of the (c)(4) defense based upon the facts in the record and the assumptions stated *supra*. Appendix A. Specifically, the Court relied upon the invoices attached to the Supplement and the checks attached to the Osherow affidavit. The Court also assumed that no other affirmative defenses under section 547(c) applied and that none of the new value was secured by an otherwise unavoidable security interest. Under this analysis, the new value defense shields all but $ 706,943 of the preference payments. This is a different result from that obtained by the Defendants' "new

-19-

value" expert. The Court notes that the Defendants' expert seems to have included certain invoices that the Court did not see in the record; however, because the Court's example is merely illustrative, the discrepancies are of no immediate import.

Turning to Plaintiff's motion for summary judgment on the new value defense, we take all inferences in favor of the Defendants. This means that we infer that any check was delivered to the Defendants on the same date as borne by the check[5]. Further, we assume that the checks were delivered prior to the transfer of any new value occurring on the same date. Under the same analysis, again for illustrative purposes only, the new value defense shields all but $369,125 of the preference payments. Appendix B.

In light of a $337,818 difference in the result, the Court views the unresolved factual issues as material. Accordingly, the Court will deny the Plaintiff's motion for summary judgment on the (c)(4) defense and also denies the Defendants' cross-motion for summary judgment on the same defense. Defendants will bear the burden at trial of showing the dates that they received the checks representing preferential transfers. For those checks that Defendants received on the same date as they transferred new value to Debtors, Defendants also bear the burden of showing that the checks were received prior in time to these same-day shipments. *See* 11 U.S.C. § 547(g).

## Conclusion

In conclusion, the Plaintiff is entitled to summary judgment on its section 547(b) claim.

---

[5] This inference requires some explanation. For post-dated checks, there is a rebuttable presumption that the transfer occurred either on the date on the face of the check or the date that the check clears the bank. *In re New York City Shoes, Inc.*, 880 F.2d 679, 679 (3d Cir. 1989). Because all inferences are in favor of defendant, and because earlier dates favor the defendant, for any post-dated checks we must infer the earlier of these two dates, that is, the date shown on the check. If a check is not post-dated, however, we must still infer the earliest date possible from the evidence. *Ex hypothesi* ,the check could not have been delivered prior to the date on the check, or it *would* be post-dated. Therefore, the earliest possible delivery date for the check would again be the date shown on the check.

Plaintiff is also entitled to summary judgment on the affirmative defenses of section 547(c)(1) and 547(c)(3). The Court will deny the Plaintiff's motion for summary judgment regarding the 547(c)(2) and (c)(4) affirmative defenses. Defendants' cross-motion for summary judgment is denied. All other relief not expressly granted will be denied. The Court will enter a separate order consistent with the decision.

### Appendix A: Hypothetical § 547(c)(4) Analysis on Defendants' Cross-Motion for Summary Judgment

| Invoice # | Transfer Date | Amount of Preferential Transfer | Amount of New Value | Running Preference Value |
|---|---|---|---|---|
| 54331 | 10/11/05 | | $4,026 | $0 |
| 54325 | 10/11/05 | | $13,219 | $0 |
| 54329 | 10/11/05 | | $13,637 | $0 |
| 54344 | 10/11/05 | | $14,051 | $0 |
| 125966 | 10/11/05 | | $19,752 | $0 |
| 125964 | 10/11/05 | | $28,673 | $0 |
| 125965 | 10/11/05 | | $34,672 | $0 |
| 125963 | 10/11/05 | | $35,339 | $0 |
| 125962 | 10/11/05 | | $37,353 | $0 |
| 54408 | 10/12/05 | | $883 | $0 |
| 54403 | 10/12/05 | | $12,800 | $0 |
| 126067 | 10/12/05 | | $15,622 | $0 |
| 126068 | 10/12/05 | | $19,898 | $0 |
| 54412 | 10/12/05 | | $21,504 | $0 |
| 126066 | 10/12/05 | | $25,003 | $0 |
| 126065 | 10/12/05 | | $41,386 | $0 |
| | 10/12/05 | $114,809 | | $114,809 |
| 54613 | 10/14/05 | | $4,982 | $109,827 |
| 54573 | 10/14/05 | | $6,234 | $103,593 |
| 54572 | 10/14/05 | | $7,142 | $96,451 |
| 54556 | 10/14/05 | | $10,717 | $85,734 |
| 54537 | 10/14/05 | | $12,880 | $72,854 |
| 54533 | 10/14/05 | | $12,886 | $59,968 |
| 54516 | 10/14/05 | | $13,843 | $46,125 |
| 54534 | 10/14/05 | | $14,484 | $31,641 |
| 54538 | 10/14/05 | | $24,850 | $6,791 |
| | 10/14/05 | $54,986 | | $61,777 |
| | 10/17/05 | $53,169 | | $114,946 |
| | 10/17/05 | $63,636 | | $178,582 |
| | 10/17/05 | $209,518 | | $388,100 |
| | 10/17/05 | $145,965 | | $534,065 |
| | 10/17/05 | $122,476 | | $656,541 |
| 126535 | 10/19/05 | | $1,426 | $655,115 |
| 126534 | 10/19/05 | | $39,228 | $615,887 |
| 126533 | 10/19/05 | | $45,724 | $570,163 |
| 54710 | 10/20/05 | | $12,208 | $557,955 |
| 54704 | 10/20/05 | | $12,880 | $545,075 |
| 54700 | 10/20/05 | | $16,360 | $528,715 |
| | 10/20/05 | $126,487 | | $655,202 |
| 54780 | 10/21/05 | | $11,968 | $643,234 |
| 54882 | 10/21/05 | | $15,568 | $627,666 |
| 54798 | 10/21/05 | | $21,720 | $605,946 |
| 126746 | 10/22/05 | | $31,330 | $574,616 |
| 126747 | 10/22/05 | | $99,470 | $475,146 |
| 126841 | 10/24/05 | | $23,137 | $452,009 |
| | 10/24/05 | $63,168 | | $515,177 |
| 126889 | 10/25/05 | | $29,330 | $485,847 |
| | 10/25/05 | $95,206 | | $581,053 |

|  |  |  |  |  |
|---|---|---|---|---|
|  | 10/25/05 | $128,950 |  | $710,003 |
| 126966 | 10/26/05 |  | $41,821 | $668,182 |
|  | 10/26/05 | $115,389 |  | $783,571 |
|  | 10/26/05 | $111,505 |  | $895,076 |
| 54973 | 10/27/05 |  | $12,176 | $882,900 |
| 54976 | 10/27/05 |  | $12,208 | $870,692 |
| 54975 | 10/27/05 |  | $12,310 | $858,382 |
| 54984 | 10/27/05 |  | $12,382 | $846,000 |
| 127058 | 10/27/05 |  | $22,868 | $823,132 |
| 127059 | 10/27/05 |  | $30,227 | $792,905 |
| 55028 | 10/28/05 |  | $13,882 | $779,023 |
|  | 10/28/05 | $79,366 |  | $858,389 |
| 127179 | 10/29/05 |  | $16,064 | $842,325 |
| 127180 | 10/29/05 |  | $31,629 | $810,696 |
| 55070 | 10/31/05 |  | $11,624 | $799,072 |
| 127361 | 11/1/05 |  | $29,745 | $769,327 |
| 55236 | 11/3/05 |  | $13,640 | $755,687 |
| 127540 | 11/3/05 |  | $27,567 | $728,120 |
| 127539 | 11/3/05 |  | $29,222 | $698,898 |
| 55279 | 11/4/05 |  | $11,638 | $687,260 |
| 55277 | 11/4/05 |  | $11,997 | $675,263 |
| 55276 | 11/4/05 |  | $12,208 | $663,055 |
|  | 11/4/05 | $13,015 |  | $676,070 |
|  | 11/4/05 | $107,381 |  | $783,451 |
| 127640 | 11/5/05 |  | $25,715 | $757,736 |
| 127639 | 11/5/05 |  | $26,071 | $731,665 |
| 55364 | 11/8/05 |  | $12,208 | $719,457 |
| 55365 | 11/8/05 |  | $12,208 | $707,249 |
| 55384 | 11/8/05 |  | $13,717 | $693,532 |
| 55376 | 11/8/05 |  | $14,071 | $679,461 |
| 127846 | 11/8/05 |  | $18,158 | $661,303 |
| 127845 | 11/8/05 |  | $36,319 | $624,984 |
| 127844 | 11/8/05 |  | $38,548 | $586,436 |
|  | 11/8/05 | $80,120 |  | $666,556 |
|  | 11/8/05 | $94,124 |  | $760,680 |
| 55416 | 11/9/05 |  | $5,132 | $755,548 |
| 127918 | 11/9/05 |  | $18,109 | $737,439 |
| 127917 | 11/9/05 |  | $29,522 | $707,917 |
| 127996 | 11/10/05 |  | $18,355 | $689,562 |
| 127995 | 11/10/05 |  | $37,945 | $651,617 |
| 55503 | 11/11/05 |  | $12,208 | $639,409 |
| 55495 | 11/11/05 |  | $14,259 | $625,150 |
| 559490 | 11/11/05 |  | $14,616 | $610,534 |
| 128103 | 11/13/05 |  | $28,061 | $582,473 |
| 55529 | 11/14/05 |  | $15,256 | $567,217 |
| 128209 | 11/14/05 |  | $23,070 | $544,147 |
| 128210 | 11/14/05 |  | $33,610 | $510,537 |
| 55562 | 11/15/05 |  | $2,976 | $507,561 |
| 55573 | 11/15/05 |  | $13,458 | $494,103 |
| 55625 | 11/15/05 |  | $24,613 | $469,490 |
| 55577 | 11/15/05 |  | $25,405 | $444,085 |
|  | 11/15/05 | $54,687 |  | $498,772 |
| 55621 | 11/16/05 |  | $14,186 | $484,586 |

| | | | | |
|---|---|---|---|---|
| | 11/16/05 | $349,458 | | $834,044 |
| 55693 | 11/17/05 | | $18,671 | $815,373 |
| 128433 | 11/17/05 | | $38,763 | $776,610 |
| 55741 | 11/18/05 | | $12,208 | $764,402 |
| 55782 | 11/18/05 | | $16,224 | $748,178 |
| 128543 | 11/19/05 | | $27,175 | $721,003 |
| 128650 | 11/21/05 | | $26,154 | $694,849 |
| | 11/22/05 | $52,069 | | $746,918 |
| 55823 | 11/23/05 | | $13,344 | $733,574 |
| 128806 | 11/24/05 | | $38,601 | $694,973 |
| 1128910 | 11/28/05 | | $24,005 | $670,968 |
| 128909 | 11/28/05 | | $46,650 | $624,318 |
| | 11/28/05 | $322,824 | | $947,142 |
| | 11/28/05 | $51,511 | | $998,653 |
| 128998 | 11/29/05 | | $15,957 | $982,696 |
| 55920 | 11/29/05 | | $16,224 | $966,472 |
| 128997 | 11/29/05 | | $38,958 | $927,514 |
| 55952 | 11/30/05 | | $13,888 | $913,626 |
| 129133 | 12/1/05 | | $16,007 | $897,619 |
| 56029 | 12/2/05 | | $13,408 | $884,211 |
| 56015 | 12/2/05 | | $14,455 | $869,756 |
| 56016 | 12/2/05 | | $17,421 | $852,335 |
| 56051 | 12/5/05 | | $12,629 | $839,706 |
| 556149 | 12/5/05 | | $15,848 | $823,858 |
| 129320 | 12/5/05 | | $24,668 | $799,190 |
| 129321 | 12/5/05 | | $27,843 | $771,347 |
| | 12/5/05 | $172,621 | | $943,968 |
| 129395 | 12/6/05 | | $28,797 | $915,171 |
| | 12/6/05 | $128,552 | | $1,043,723 |
| 56150 | 12/7/05 | | $13,067 | $1,030,656 |
| 129468 | 12/7/05 | | $17,973 | $1,012,683 |
| 129467 | 12/7/05 | | $38,188 | $974,495 |
| 56189 | 12/8/05 | | $11,984 | $962,511 |
| 129560 | 12/8/05 | | $14,508 | $948,003 |
| 56192 | 12/8/05 | | $14,725 | $933,278 |
| 129561 | 12/8/05 | | $35,867 | $897,411 |
| 56144 | 12/9/05 | | $11,336 | $886,075 |
| 129659 | 12/9/05 | | $28,249 | $857,826 |
| 56282 | 12/12/05 | | $12,208 | $845,618 |
| 52688 | 12/12/05 | | $12,208 | $833,410 |
| 56296 | 12/12/05 | | $12,814 | $820,596 |
| 56284 | 12/12/05 | | $13,216 | $807,380 |
| 129753 | 12/12/05 | | $42,274 | $765,106 |
| 129752 | 12/12/05 | | $43,302 | $721,804 |
| 129754 | 12/12/05 | | $89,606 | $632,198 |
| 129841 | 12/13/05 | | $15,376 | $616,822 |
| 129840 | 12/13/05 | | $16,774 | $600,048 |
| 129839 | 12/13/05 | | $39,864 | $560,184 |
| 129991 | 12/14/05 | | $15,870 | $544,314 |
| 56419 | 12/16/05 | | $12,056 | $532,258 |
| | 12/16/05 | $213,008 | | $745,266 |
| 13011 | 12/17/05 | | $38,323 | **$706,943** |
| | Totals | $3,124,000 | $2,754,875 | |

-24-

**Appendix B:**Hypothetical § 547(c)(4) Analysis on Plaintiff's Motion for Summary Judgment

| Invoice # | Transfer Date | Amount of Preferential Transfer | Amount of New Value | Running Preference Value |
|---|---|---|---|---|
| | 10/6/05 | $114,809 | | $114,809 |
| | 10/7/05 | $54,986 | | $169,795 |
| | 10/7/05 | $63,636 | | $233,431 |
| | 10/11/05 | $53,169 | | $286,600 |
| | 10/11/05 | $209,518 | | $496,118 |
| 54331 | 10/11/05 | | $4,026 | $492,092 |
| 54325 | 10/11/05 | | $13,219 | $478,873 |
| 54329 | 10/11/05 | | $13,637 | $465,236 |
| 54344 | 10/11/05 | | $14,051 | $451,185 |
| 125966 | 10/11/05 | | $19,752 | $431,433 |
| 125964 | 10/11/05 | | $28,673 | $402,760 |
| 125965 | 10/11/05 | | $34,672 | $368,088 |
| 125963 | 10/11/05 | | $35,339 | $332,749 |
| 125962 | 10/11/05 | | $37,353 | $295,396 |
| | 10/12/05 | $145,965 | | $441,361 |
| 54408 | 10/12/05 | | $883 | $440,478 |
| 54403 | 10/12/05 | | $12,800 | $427,678 |
| 126067 | 10/12/05 | | $15,622 | $412,056 |
| 126068 | 10/12/05 | | $19,898 | $392,158 |
| 54412 | 10/12/05 | | $21,504 | $370,654 |
| 126066 | 10/12/05 | | $25,003 | $345,651 |
| 126065 | 10/12/05 | | $41,386 | $304,265 |
| | 10/13/05 | $122,476 | | $426,741 |
| | 10/14/05 | $126,487 | | $553,228 |
| 54613 | 10/14/05 | | $4,982 | $548,246 |
| 54573 | 10/14/05 | | $6,234 | $542,012 |
| 54572 | 10/14/05 | | $7,142 | $534,870 |
| 54556 | 10/14/05 | | $10,717 | $524,153 |
| 54537 | 10/14/05 | | $12,880 | $511,273 |
| 54533 | 10/14/05 | | $12,886 | $498,387 |
| 54516 | 10/14/05 | | $13,843 | $484,544 |
| 54534 | 10/14/05 | | $14,484 | $470,060 |
| 54538 | 10/14/05 | | $24,850 | $445,210 |
| | 10/17/05 | $95,206 | | $540,416 |
| | 10/18/05 | $63,168 | | $603,584 |
| | 10/19/05 | $128,950 | | $732,534 |
| 126535 | 10/19/05 | | $1,426 | $731,108 |
| 126534 | 10/19/05 | | $39,228 | $691,880 |
| 126533 | 10/19/05 | | $45,724 | $646,156 |
| | 10/20/05 | $115,389 | | $761,545 |
| 54710 | 10/20/05 | | $12,208 | $749,337 |
| 54704 | 10/20/05 | | $12,880 | $736,457 |
| 54700 | 10/20/05 | | $16,360 | $720,097 |
| | 10/21/05 | $111,505 | | $831,602 |
| 54780 | 10/21/05 | | $11,968 | $819,634 |
| 54882 | 10/21/05 | | $15,568 | $804,066 |
| 54798 | 10/21/05 | | $21,720 | $782,346 |
| 126746 | 10/22/05 | | $31,330 | $751,016 |
| 126747 | 10/22/05 | | $99,470 | $651,546 |

|  | 10/24/05 | $79,366 |  | $730,912 |
| 126841 | 10/24/05 |  | $23,137 | $707,775 |
| 126889 | 10/25/05 |  | $29,330 | $678,445 |
| 126966 | 10/26/05 |  | $41,821 | $636,624 |
| 54973 | 10/27/05 |  | $12,176 | $624,448 |
| 54976 | 10/27/05 |  | $12,208 | $612,240 |
| 54975 | 10/27/05 |  | $12,310 | $599,930 |
| 54984 | 10/27/05 |  | $12,382 | $587,548 |
| 127058 | 10/27/05 |  | $22,868 | $564,680 |
| 127059 | 10/27/05 |  | $30,227 | $534,453 |
|  | 10/28/05 | $13,015 |  | $547,468 |
| 55028 | 10/28/05 |  | $13,882 | $533,586 |
| 127179 | 10/29/05 |  | $16,064 | $517,522 |
| 127180 | 10/29/05 |  | $31,629 | $485,893 |
|  | 10/31/05 | $107,381 |  | $593,274 |
| 55070 | 10/31/05 |  | $11,624 | $581,650 |
|  | 11/1/05 | $80,120 |  | $661,770 |
| 127361 | 11/1/05 |  | $29,745 | $632,025 |
|  | 11/2/05 | $94,124 |  | $726,149 |
| 55236 | 11/3/05 |  | $13,640 | $712,509 |
| 127540 | 11/3/05 |  | $27,567 | $684,942 |
| 127539 | 11/3/05 |  | $29,222 | $655,720 |
| 55279 | 11/4/05 |  | $11,638 | $644,082 |
| 55277 | 11/4/05 |  | $11,997 | $632,085 |
| 55276 | 11/4/05 |  | $12,208 | $619,877 |
| 127640 | 11/5/05 |  | $25,715 | $594,162 |
| 127639 | 11/5/05 |  | $26,071 | $568,091 |
| 55364 | 11/8/05 |  | $12,208 | $555,883 |
| 55365 | 11/8/05 |  | $12,208 | $543,675 |
| 55384 | 11/8/05 |  | $13,717 | $529,958 |
| 55376 | 11/8/05 |  | $14,071 | $515,887 |
| 127846 | 11/8/05 |  | $18,158 | $497,729 |
| 127845 | 11/8/05 |  | $36,319 | $461,410 |
| 127844 | 11/8/05 |  | $38,548 | $422,862 |
| 55416 | 11/9/05 |  | $5,132 | $417,730 |
| 127918 | 11/9/05 |  | $18,109 | $399,621 |
| 127917 | 11/9/05 |  | $29,522 | $370,099 |
|  | 11/10/05 | $54,687 |  | $424,786 |
| 127996 | 11/10/05 |  | $18,355 | $406,431 |
| 127995 | 11/10/05 |  | $37,945 | $368,486 |
|  | 11/11/05 | $349,458 |  | $717,944 |
| 55503 | 11/11/05 |  | $12,208 | $705,736 |
| 55495 | 11/11/05 |  | $14,259 | $691,477 |
| 559490 | 11/11/05 |  | $14,616 | $676,861 |
| 128103 | 11/13/05 |  | $28,061 | $648,800 |
| 55529 | 11/14/05 |  | $15,256 | $633,544 |
| 128209 | 11/14/05 |  | $23,070 | $610,474 |
| 128210 | 11/14/05 |  | $33,610 | $576,864 |
|  | 11/15/05 | $51,511 |  | $628,375 |
|  | 11/15/05 | $52,069 |  | $680,444 |
| 55562 | 11/15/05 |  | $2,976 | $677,468 |
| 55573 | 11/15/05 |  | $13,458 | $664,010 |
| 55625 | 11/15/05 |  | $24,613 | $639,397 |

| | | | | |
|---|---|---|---|---|
| 55577 | 11/15/05 | | $25,405 | $613,992 |
| 55621 | 11/16/05 | | $14,186 | $599,806 |
| 55693 | 11/17/05 | | $18,671 | $581,135 |
| 128433 | 11/17/05 | | $38,763 | $542,372 |
| | 11/18/05 | $322,824 | | $865,196 |
| 55741 | 11/18/05 | | $12,208 | $852,988 |
| 55782 | 11/18/05 | | $16,224 | $836,764 |
| 128543 | 11/19/05 | | $27,175 | $809,589 |
| 128650 | 11/21/05 | | $26,154 | $783,435 |
| 55823 | 11/23/05 | | $13,344 | $770,091 |
| 128806 | 11/24/05 | | $38,601 | $731,490 |
| | 11/28/05 | $128,552 | | $860,042 |
| 1128910 | 11/28/05 | | $24,005 | $836,037 |
| 128909 | 11/28/05 | | $46,650 | $789,387 |
| | 11/29/05 | $172,621 | | $962,008 |
| 128998 | 11/29/05 | | $15,957 | $946,051 |
| 55920 | 11/29/05 | | $16,224 | $929,827 |
| 128997 | 11/29/05 | | $38,958 | $890,869 |
| 55952 | 11/30/05 | | $13,888 | $876,981 |
| 129133 | 12/1/05 | | $16,007 | $860,974 |
| 56029 | 12/2/05 | | $13,408 | $847,566 |
| 56015 | 12/2/05 | | $14,455 | $833,111 |
| 56016 | 12/2/05 | | $17,421 | $815,690 |
| 56051 | 12/5/05 | | $12,629 | $803,061 |
| 556149 | 12/5/05 | | $15,848 | $787,213 |
| 129320 | 12/5/05 | | $24,668 | $762,545 |
| 129321 | 12/5/05 | | $27,843 | $734,702 |
| 129395 | 12/6/05 | | $28,797 | $705,905 |
| 56150 | 12/7/05 | | $13,067 | $692,838 |
| 129468 | 12/7/05 | | $17,973 | $674,865 |
| 129467 | 12/7/05 | | $38,188 | $636,677 |
| 56189 | 12/8/05 | | $11,984 | $624,693 |
| 129560 | 12/8/05 | | $14,508 | $610,185 |
| 56192 | 12/8/05 | | $14,725 | $595,460 |
| 129561 | 12/8/05 | | $35,867 | $559,593 |
| 56144 | 12/9/05 | | $11,336 | $548,257 |
| 129659 | 12/9/05 | | $28,249 | $520,008 |
| 56282 | 12/12/05 | | $12,208 | $507,800 |
| 52688 | 12/12/05 | | $12,208 | $495,592 |
| 56296 | 12/12/05 | | $12,814 | $482,778 |
| 56284 | 12/12/05 | | $13,216 | $469,562 |
| 129753 | 12/12/05 | | $42,274 | $427,288 |
| 129752 | 12/12/05 | | $43,302 | $383,986 |
| 129754 | 12/12/05 | | $89,606 | $294,380 |
| 129841 | 12/13/05 | | $15,376 | $279,004 |
| 129840 | 12/13/05 | | $16,774 | $262,230 |
| 129839 | 12/13/05 | | $39,864 | $222,366 |
| 129991 | 12/14/05 | | $15,870 | $206,496 |
| | 12/16/05 | $213,008 | | $419,504 |
| 56419 | 12/16/05 | | $12,056 | $407,448 |
| 13011 | 12/17/05 | | $38,323 | **$369,125** |
| | | $3,124,000 | $2,754,875 | |

# # #